# IN THE COURT OF APPEALS OF IOWA

No. 17-1197
Filed October 11, 2017

**IN THE INTEREST OF J.M.,**
**Minor Child,**

**J.L., Mother,**
　　　　Appellant.
_____

　　　　Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

　　　　Mother appeals from the order terminating her parental rights pursuant to Iowa Code chapter 232 (2017). **REVERSED AND REMANDED.**

　　　　Linda A. Hall of Linda Hall Law Firm & Mediation Services, P.L.L.C., Cedar Falls, for appellant mother.

　　　　Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

　　　　Joslyn N. Sailer of Sailer Law, PLLC., Waterloo, guardian ad litem for minor child.

　　　　Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

Jazie, the mother, appeals from an order terminating her parental rights in her child, J.M., pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2017). On appeal, the mother challenges the sufficiency of the evidence supporting each of the grounds authorizing termination of her parental rights. She also contends the State failed to make reasonable efforts to facilitate reunification of the family and termination is not in the best interest of J.M.

I.

This family came to the attention of the Iowa Department of Human Services (IDHS) and the juvenile court in February 2016 when police responded to a complaint regarding the conduct of an occupant in a local hotel. In responding to the complaint, the police found Jazie and her paramour in the hotel room with J.M. The teenaged Jazie was staying in the hotel for a week while she was transitioning into a new residence. At the time the police found her in the hotel, Jazie had been self-medicating with marijuana. Two of her close friends had recently committed suicide. She had suffered and was suffering from medical issues that restricted her physically and caused her to lose her employment due to non-attendance. The police found marijuana and a handgun. Jazie testified the handgun belonged to her paramour. Jazie and her paramour were arrested and charged with child endangerment and possession of a controlled substance. IDHS removed J.M. from Jazie's care at that time.

The child was adjudicated in need of assistance in March of 2016. At that time, IDHS put in place a plan for services to reunify Jazie and J.M. The services included mental-health treatment, substance-abuse treatment, parenting classes,

and visitation, among other things. At the time of the adjudication hearing, Jazie was nineteen years old and J.M. was one year old.

Jazie made significant progress toward reunification with the child. She terminated her relationship with the paramour. She began mental-health and substance-abuse treatment. She obtained steady employment, including one full-time management position and a second part-time position. She obtained her own residence. The Family Safety, Risk, and Permanency (FSRP) care coordinator testified the residence was safe and appropriate for the child. Jazie attended parenting classes, applied the lessons learned, and bettered her parenting skills. The FSRP care coordinator testified the visits between Jazie and J.M. improved greatly. Her visits moved from supervised to semi-supervised.

Jazie suffered a setback in the fall and winter of 2016. In September, she tested positive for use of marijuana. Her visits were moved from semi-supervised back to supervised. Nonetheless, in November 2016, the juvenile court deferred permanency pursuant to Iowa Code section 232.104(2)(b) because of Jazie's "increased participation in services and follow through." Jazie continued with her services after the permanency hearing. She also continued with visitation three times a week for three hours each visit. However, she tested positive for marijuana three times between December 2016 and February 2017. Based on the failed drug tests, the State filed its petition to terminate Jazie's parental rights, which the district court granted.

II.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The legal framework for termination appeals is well established. *See id.*; *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016) (stating review is de novo and setting forth the applicable "three-step inquiry"). Importantly, we will uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "It is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016). This significant burden is imposed on the State to minimize the risk of an erroneous deprivation of a parent's fundamental liberty interest in raising her child. *Id.*

A.

Jazie challenges the sufficiency of the evidence authorizing the termination of her parental rights pursuant to Iowa Code section 232.116(1)(e). Iowa Code section 232.116(1)(e) authorizes the termination of parental rights when:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "*significant and meaningful contact*" includes but is

not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

"The duties contemplated by the statute "require[] continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and require[] that the parents establish and maintain a place of importance in the child's life." *In re S.W.*, No. 15–0549, 2015 WL 3635722, at *4 (Iowa Ct. App. June 10, 2015) (alterations in original).

The State failed to prove by clear and convincing evidence this ground to support termination of Jazie's rights. Jazie has demonstrated a continued interest in the child. Jazie attended 99% of her three weekly visits with J.M. The case worker testified the visits went well. Jazie made genuine efforts to comply with the case plan. At the time of the termination hearing, she provided negative drug tests. She was to be successfully discharged from substance-abuse treatment. She was still attending mental-health counseling. She was participating in parenting classes. She had attained financial stability, working two jobs. She had also obtained safe and appropriate housing. The evidence also showed she maintained an important place in J.M.'s life. The testimony showed Jazie and J.M. were bonded. There is not clear and convincing evidence Jazie failed to maintain significant and meaningful contact with J.M. Termination pursuant to Iowa Code section 232.116(1)(e) was not proved.

B.

Jazie challenges the sufficiency of the evidence in support of paragraph

(*l*).  Iowa Code section 232.116(1)(*l*) states the a court may terminate parental

rights when:

> (1)    The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2)    The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3)    There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

A "substance-related disorder" is defined as "a diagnosable substance

abuse disorder of sufficient duration to meet diagnostic criteria specified within

the most current diagnostic and statistical manual of mental disorders published

by the American psychiatric association that results in a functional impairment."

Iowa Code § 125.2(14).  When assessing the sufficiency of the evidence in

support of this ground, "[i]t is no longer sufficient for the court to assess in lay

terms whether the parent suffers from 'a severe, chronic substance problem,' as

the definition of substance-related disorder requires consideration of diagnostic

criteria from the DSM–V."  *In re M.F.*, No. 16-0434, 2016 WL 2743488, at *3

(Iowa Ct. App. May 11, 2016); *see also In re G.B.*, No. 14-1516, 2014 WL

6682456, at *4 (Iowa Ct. App. Nov. 26, 2014) ("The definition of substance-

related disorder requires consideration of diagnostic criteria from the DSM–5.").

There was not clear and convincing evidence in support of this ground.

The State did not prove the mother presents a danger to herself or others.  *See*

*In re M.S.*, 889 N.W.2d at 682 (providing drug use alone, specifically marijuana use, alone does not establish adjudicatory harm). The State argues Jazie poses a risk of harm to the child as evidenced by the fact J.M. tested positive for marijuana at the time of removal. This could serve as a prior act showing an appreciable risk of danger to the child. However, that test result was more than one year prior to the termination hearing. The social worker working directly with the family testified she had no safety concerns about Jazie's home or parenting.

The State also did not prove by clear and convincing evidence that Jazie's prognosis related to this condition precluded return of the child to her care. Jazie was actively engaged in treatment at the time of the termination hearing. She was a leader in her treatment group and showed no signs of relapse. At the time of the termination hearing, Jazie had provided negative drug tests for two months. Jazie's prognosis was good and showed she would be able to provide care for the child if returned to her care.

We conclude the State failed to prove by clear and convincing evidence that Jazie is a danger to herself or others and that her prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

## C.

Jazie also challenges the sufficiency of the evidence supporting the termination of her rights pursuant to Iowa Code section 232.116(1)(h). The parties only dispute section 232.116(1)(h)(4), which requires "clear and convincing evidence that the child cannot be returned to the custody of the child's

parents as provided in section 232.102 at the present time." Under this element, a child cannot be returned to a parent if the child would remain a child in need of assistance or would be exposed to harm amounting to a new child-in-need-of-assistance adjudication. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "We have interpreted this to require clear and convincing evidence the child[] would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

It is not disputed that Jazie relapsed during the course of these proceedings, testing positive for marijuana in the fall and winter of 2016. This was the primary fact supporting IDHS's recommendation to terminate parental rights. The IDHS case manager testified J.M. should not be returned to Jazie because of "[h]er ongoing continued use of illegal substances . . . and the overall safety of the child. I think that mom is young and still has some parenting skills she needs to learn and she has not followed through with those court-ordered requirements."

We conclude the State failed to prove by clear and convincing evidence the nexus between marijuana use and harm to the child. "[T]he mere fact of [drug] use does not establish adjudicatory harm." *In re M.S.*, 889 N.W.2d at 682. The State must show a "nexus" between the parent's drug use and "appreciable risk of adjudicatory harm to the child." *Id.* The most relevant authority regarding the nexus between marijuana use and adjudicatory harm is *M.S.* In that case, the father regularly exercised visitation with the child and built a bond with the child. However, the father tested positive for marijuana during the course of

proceedings. At the termination hearing, the father testified his days of use were behind him. A social worker testified the father's conduct was never a safety concern with respect to the child. *Id.* This court found the State failed to prove the child would be exposed to an appreciable risk of adjudicatory harm on the facts. *Id.*

Similarly, in this case, Jazie exercised regular visitation with the child and built a bond with the child. The evidence showed the child had difficulty separating from Jazie at the end of visitation. Like the father in *M.S.*, Jazie demonstrated the capacity to overcome her substance abuse. There is no evidence she was ever under the influence of drugs while caring for J.M. after the incident that led to the child's removal. She tested negative in the months preceding the termination hearing. Her substance-abuse counselor testified Jazie was actively engaged in treatment, was a leader in her treatment group, and displayed no behavioral indicators of relapse. Jazie's IDHS case manager did testify to one visit to Jazie's home where the home smelled of marijuana in February 2017. Although concerning, we find termination should not be supported by this testimony because the child was not in Jazie's care at the time and Jazie's FSRP coordinator visited Jazie's home far more frequently without issue. The FSRP coordinator attended visitations in Jazie's home three times per week but never raised any concerns regarding marijuana use in the home and testified the home was safe and stable. The coordinator testified the visits were appropriate and Jazie was attentive to J.M.'s needs.

We also find it insufficient to establish the child would be exposed to an appreciable risk of adjudicatory harm merely because Jazie is young and has

parenting skills to learn. The fact Jazie is young militates in her favor. She has the capacity to change. *See In re L.P.*, No. 06-0458, 2006 WL 2265258, at \*1 (Iowa Ct. App. Aug. 9, 2006) (holding "termination is not appropriate under the circumstances of this case involving an immature, yet loving and otherwise capable mother."). The evidence showed she has. Jazie attended parenting classes. Jazie's social worker testified Jazie was very cooperative with these services and made dramatic improvements in her parenting during visits with J.M. We reject IDHS's contention that Jazie needlessly delayed participating in parenting classes. She enrolled in the programs IDHS identified for her, but there was a waitlist for the programs.

There is additional reason to believe J.M. would not be exposed to an appreciable risk of adjudicatory harm if returned to Jazie's care. Since this case was initiated, Jazie has maintained stable employment at two restaurants, working more than full-time, for an extended period of time. She is even in a managerial role at one of her jobs. She has obtained financial stability. Financial stability is an important indicator of increased maturity and appropriate parental supervision. *See In re N.S.,* No. 13-0598, 2013 WL 3279985, at \*5 (Iowa Ct. App. June 26, 2013) (noting the importance of a history of stable housing and employment in the ability to offer a safe environment); *In re T.B.*, No. 03-1425, 2004 WL 57739, at \*2 (Iowa Ct. App. Jan. 14, 2004) (repeatedly emphasizing a lack of consistent employment as an indicator of irresponsible parenting); *In re D.T.J.*, No. 02-0943, 2002 WL 1758417, at \*1 (Iowa Ct. App. July 31, 2002) (explaining a lack of consistent employment and ability to support a child, along

with a lack of stable housing and transportation, were critical facts in terminating parental rights under paragraph (h)).

Jazie has a strong support system to maintain sobriety and continue to grow as a parent. She maintains a close, lifelong relationship with her godmother Alicia, who has training in social work. Alicia testified to Jazie's dramatic growth in maturity and parenting skills. Alicia serves a strong mentoring role in Jazie's life. Barbara, another close friend of Jazie, testified on Jazie's behalf. The two have been friends for over six years. Barbara is incredibly supportive of Jazie's relationship with J.M. Jazie also testified to her supportive peer groups at her places of employment. Strong communal relationships are another factor we consider in determining the safety of the child and future prospects for responsible parenting. *See In re A.M.E.*, No. 11-0074, 2011 WL 944423, at *3 (Iowa Ct. App. Mar. 21, 2011) (mentioning community support as a factor in the transition to responsible parenting); *In re N.F.*, 579 N.W.2d 338, 340 (Iowa Ct. App. 1998) (noting the importance of a support system to maintain sobriety).

"Children do not need to have perfect parents to succeed. In fact, imperfect parents have valuable life lessons to impart." *In re K.S.*, No. 16-0605, 2016 WL 5933516, at *3 (Iowa Ct. App. Oct. 12, 2016). We recognize that Jazie is not a perfect parent. She has made some mistakes in the past year and a half. But she has also demonstrated the capacity for change and self-improvement. The trial testimony reflects she will likely continue in that direction and be able to provide appropriate and safe care of J.M. if given the opportunity. There is not

clear and convincing evidence that J.M. would be at an appreciable risk of adjudicatory harm if returned to Jazie's care.

III.

For the foregoing reasons, we reverse the termination of Jazie's parental rights in J.M.

**REVERSED AND REMANDED.**